UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RONNIE FARMER,

       Plaintiff,                              Hon. Ellen S. Carmody

v.

                                          Case No. 1:11-cv-504

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying in part and granting in part Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. On September 2, 2011, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #8).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 52 years old on the date that the ALJ found him disabled. (Tr. 13-24, 72). Plaintiff successfully completed high school and worked previously as a janitor, baker, laborer, and machine operator. (Tr. 100, 109-16, 491). Plaintiff applied for benefits on June 8, 2004, alleging that he had been disabled since December 1, 2001,[1] due to lower back pain, right knee and hip problems, and left wrist problems. (Tr. 72-76, 99). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 37-71). On March 14, 2007, Plaintiff appeared before ALJ Lawrence Blatnik, with testimony being offered by Plaintiff and vocational expert, Sandra Steele. (Tr. 482-534). In a written decision dated June 19, 2007, the ALJ determined that Plaintiff was not disabled. (Tr. 29-36). The Appeals Council subsequently remanded the matter for further consideration. (Tr. 63-66).

On August 27, 2009, ALJ Blatnik conducted a second administrative hearing at which Plaintiff and vocational expert, Joanne Pheffer, testified. (Tr. 433-81). In a written decision dated December 15, 2009, the ALJ determined that Plaintiff was disabled as of July 18, 2007. (Tr. 13-24). The Appeals Council declined to review this determination, rendering it the Commissioner's final decision in the matter. (Tr. 3-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C.

---

[1] Plaintiff later amended his disability onset date to December 25, 2003. (Tr. 75).

§ 405(g), seeking judicial review of the ALJ's decision. Specifically, Plaintiff asserts that he was disabled as of an earlier date than that recognized by the ALJ.

## RELEVANT MEDICAL HISTORY

X-rays of Plaintiff's pelvis, taken on April 2, 2004, were "negative" with no evidence of fracture or soft tissue abnormality. (Tr. 157). X-rays of Plaintiff's right femur, taken the same day, were "normal" with no evidence of fracture or dislocation. (Tr. 158). X-rays of Plaintiff's lumbar spine, also taken on April 2, 2004, revealed degenerative changes with "slight" scoliosis, otherwise "stature, alignment and spacing of the lumbar segments are maintained." (Tr. 159).

On October 13, 2005, Plaintiff participated in an MRI examination of his left knee the results of which revealed a tear of the lateral meniscus, but no evidence of a medial meniscal tear. (Tr. 205-06). This examination also revealed evidence of osteoarthritis and cartilage abnormalities. (Tr. 205-06). On the same day, Plaintiff participated in an MRI examination of his right knee the results of which revealed "abnormal signal intensity within the anterior horn extending to the body of the lateral meniscus" and "lateral subluxation to the patella with subtle areas of cartilage irregularity in the patella." (Tr. 207-08).

On February 24, 2006, Plaintiff underwent surgery to repair his right knee. (Tr. 234-35). Specifically, the doctor performed "arthroscopy of the right knee with partial lateral meniscectomy and synovectomy." (Tr. 234-35). Treatment notes dated March 14, 2006, indicate that Plaintiff's right knee was "doing well" and "his motion is improving." (Tr. 233). The doctor observed no evidence of effusion, edema, or infection. (Tr. 233). Treatment notes dated July 19, 2006, indicate that Plaintiff's "right knee is doing extremely well." (Tr. 232).

On December 4, 2006, Plaintiff underwent surgery to repair his left knee. (Tr. 210-11). Specifically, the doctor performed "arthroscopy of the left knee with partial lateral meniscectomy and synovectomy." (Tr. 210-11). Treatment notes dated January 3, 2007, indicate that Plaintiff's left knee "is doing reasonably well" with "reasonable motion." (Tr. 229). Treatment notes dated February 15, 2007, indicate that Plaintiff exhibited "good motion" of his left knee. (Tr. 228).

On April 2, 2007, Dr. Shannon Wiggins completed a report concerning Plaintiff's ability to perform physical work-related activities. (Tr. 249-52). The doctor reported that during an eight-hour workday Plaintiff could sit, stand, and walk for 30 minutes each. (Tr. 249). The doctor reported that Plaintiff could "occasionally" lift/carry five pounds, but could "never" lift or carry 10 pounds or greater. (Tr. 250). The doctor reported that Plaintiff could "never" bend, twist, squat, kneel, crawl, stoop, climb stairs or ladders, or reach above shoulder level. (Tr. 251).

On July 18, 2007, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed "evidence of disc degenerative disease beginning at the L3-L4 level extending across L5-S1 [with] a right lateral extrusion at the L4-L5 level in direct contact with the exiting L4 nerve root." (Tr. 244-46). An MRI of Plaintiff's cervical and thoracic spine, performed the same day, revealed the following:

> 1) In the cervical region, disc disease at C3-C4 and C4-C5 significantly encroaches upon the spinal canal. There is encroachment upon the cord at C3-C4. Cord compression is not evident at these levels.
>
> 2) At the thoracic level T4-T5, T5-T6, and T6-T7, ossification of the interspinous ligaments is noted, heavily ossified at T4-T5, there is direct compression of the spinal cord. Similar change is noted at T5-T6 resulting in direct impingement

>   upon the cord.
>
> 3)  Mild disc degenerative disease is noted at T9-T10, T10-T11, and T11-T12.

(Tr. 238-42).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience,

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that as of December 25, 2003, Plaintiff suffered from: (1) degenerative joint disease and meniscal tearing of the knees; (2) status post bilateral knee arthroscopy; (3) degenerative disc disease and stenosis of the spine; (4) hypertension; and (5) carpal instability and possible avascular necrosis of the lunate, left wrist. (Tr. 15). The ALJ further determined that as of July 18, 2007, Plaintiff also suffered from status post proximal row carpectomy and a depressive disorder. (Tr. 15-16). The ALJ concluded that while Plaintiff's impairments were severe, whether considered alone or in combination with other impairments, such failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 15-19).

With respect to Plaintiff's residual functional capacity, the ALJ determined that prior to July 18, 2007, Plaintiff retained the ability to perform work subject to the following limitations: (1) he can lift/carry up to 20 pounds occasionally and 10 pounds frequently; (2) he can sit for six hours during an 8-hour workday; (3) he can stand and/or walk for four hours during an 8-hour workday; (4) he requires the ability to sit or stand at will; (5) he cannot climb ladders, scaffolds, ropes, ramps, or stairs; (6) he cannot crouch, kneel, or crawl; (7) he can occasionally balance, stoop,

squat, bend, and twist or turn at the waist; (8) he cannot work in an areas with temperature extremes, wetness, humidity, dangerous or unprotected machinery, or at unprotected heights; (9) he cannot use air, pneumatic, power, torque, or vibratory tools; and (10) he can only occasionally use foot controls. (Tr. 19).

The ALJ further determined that beginning on July 18, 2007, Plaintiff retained the ability to perform work activities subject to the following limitations: (1) he can lift/carry up to 10 pounds occasionally and less than 10 pounds frequently; (2) he can sit for six hours during an 8-hour workday; (3) he can stand and/or walk for two hours during an 8-hour workday; (4) he requires the ability to sit or stand at will; (5) he cannot climb ladders, scaffolds, ropes, ramps, or stairs; (6) he cannot crouch, kneel, or crawl; (7) he can occasionally balance, stoop, squat, bend, and twist or turn at the waist; (8) he cannot work in an areas with temperature extremes, wetness, humidity, dangerous or unprotected machinery, or at unprotected heights; (9) he cannot use air, pneumatic, power, torque, or vibratory tools; (10) he can only occasionally use foot controls; and (11) he was limited to unskilled work with an SVP rating of 1 or 2.[3]  (Tr. 21-22).

The ALJ concluded that Plaintiff was unable to perform any of his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a

---

[3] SVP ratings measure the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *See* Dictionary of Occupational Titles, Appendix C, available at http://www.occupationalinfo.org/appendxc_1.html (last visited on September 21, 2012).  A job with an SVP rating of 1 corresponds to a job that a typical worker can perform after a "short demonstration only."  A job with an SVP rating of two corresponds to a job that a typical worker can perform after "anything beyond short demonstration up to and including 1 month."  *Id.*

claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Joanne Pheffer.

With respect to Plaintiff's RFC prior to July 18, 2007, the vocational expert testified that there existed approximately 20,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 40-42). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). With respect to Plaintiff's RFC as of July 18, 2007, the ALJ found that Plaintiff satisfied Rule 201.10 of the Medical-Vocational Guidelines. Accordingly, the ALJ concluded that Plaintiff was disabled as of July 18, 2007, but not prior thereto.

a.  The ALJ Properly Evaluated the Medical Evidence

Plaintiff first argues that the ALJ "ignore[d] the opinions of the treating physician." Plaintiff has failed to identify the "treating physician" in question and, moreover, has failed to identify where in the administrative record the "opinions" in question can be located. Plaintiff simply asserts that "the treating doctor determined the claimant was disabled in October 2006." The

9

Court has located no evidence of an October 2006 examination or report in which it was determined that Plaintiff was disabled as of October 2006. It *appears* that Plaintiff is making reference to the report (discussed above) completed by Dr. Wiggins on April 2, 2007. Contrary to Plaintiff's argument, however, Dr. Wiggins did not report that Plaintiff was disabled as of October 2006. Rather, the doctor simply noted that he first examined Plaintiff on October 20, 2006. (Tr. 252).

Simply put, Plaintiff has failed in his affirmative obligation to more clearly articulate the basis for his claims of error. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same). As Plaintiff has failed to sufficiently develop this particular argument, the Court finds that such has been waived.

The Court further notes that assuming that Plaintiff is making reference to Dr. Wiggins' April 2007 report, the result is the same. The ALJ discussed Dr. Wiggins' report and accorded it limited weight as it is inconsistent with the doctor's contemporaneous treatment notes. (Tr. 21, 212-26, 281-97). As the ALJ further observed, Dr. Wiggins' opinion was also inconsistent with other evidence of record concerning Plaintiff's condition prior to July 18, 2007. (Tr. 21). This assessment is supported by substantial evidence. This particular argument, therefore, is rejected.

          b.     The ALJ's Disability Onset Date is Supported by Substantial Evidence

Plaintiff also argues that the ALJ's determination that he was disabled as of July 18, 2007, is not supported by substantial evidence. Plaintiff argues that the ALJ should have found him

disabled as of October 2006.  The Court notes that Plaintiff bears the burden to establish that he was disabled as of a date prior to the date that the ALJ found him disabled.  *See, e.g., McClanahan v. Commissioner of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Garland v. Commissioner of Social Security*, 2010 WL 3087464 at *3 (N.D. Ohio, Aug. 6, 2010).

As discussed above, on July 18, 2007, Plaintiff participated in an MRI examination of his lumbar, cervical, and thoracic spine, the results of which revealed that Plaintiff was suffering from serious spinal impairments which, as the ALJ recognized, severely impaired Plaintiff's ability to perform work activities.  While the Court agrees with Plaintiff that these particular impairments were certainly in existence prior to July 18, 2007, the record simply does not contain evidence indicating that, prior to this date, such impairments limited Plaintiff to an extent greater than that recognized by the ALJ.  With respect to his determination that Plaintiff was disabled beginning on July 18, 2007, the ALJ observed that:

> It is true that July 2007 studies demonstrated significantly abnormal radiological findings that were no doubt in existence to some degree previously.  However, prior to that date, the record does not reflect that the underlying pathology engendered profound dysfunction.  Clinicians observed the claimant ambulate normally typically without an assistive device. . .and to retain functional range of motion.  The claimant's neurological functions in terms of motor power, reflex activity, sensation, coordination and balance were largely intact, and his musculoskeletal and extremity reviews were commonly free of deformity, clubbing, cyanosis, edema, heat, discoloration, ulceration, diminished pulsation or atrophic changes.

(Tr. 20).

In sum, the medical evidence concerning the period prior to July 18, 2007, substantially supports the ALJ's finding as to Plaintiff's disability onset date.  As for the medical evidence dated after July 18, 2007, while such clearly reveals that Plaintiff's health continued to

deteriorate after this date it does not suggest that Plaintiff's limitations, prior to July 18, 2007, were more extensive than recognized by the ALJ in his RFC determination.  The Court, therefore, finds that Plaintiff has failed to satisfy his burden of establishing that he was disabled at any date prior to July 18, 2007.  Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.  A judgment consistent with this opinion will enter.


Date:  September 25, 2012                              /s/ Ellen S. Carmody
                                                                            ELLEN S. CARMODY
                                                                            United States Magistrate Judge